LUTU S. and wife FAALUA of Fagatogo, now residing in Nu'uuli, Plaintiffs

v.

FUIMAONO of Nu'uuli, Defendant

No. 13-1964

High Court of American Samoa

Civil Jurisdiction, Trial Division

February 6, 1964

Lutu, Counsel for himself and Faalua.
Muagututia, Counsel for Fuimaono.

MORROW, *Chief Justice.*

Plaintiffs Lutu S. and Faalua, husband and wife, filed their petition on January 22, 1964 praying for an order restraining defendant Fuimaono from trespassing upon a certain part of Tago Family land now occupied by the plain-

tiffs; also for an order evicting defendant from the same land.

At the beginning of the hearing plaintiffs amended their petition by deleting the prayer for an eviction and substituting therefor a prayer for an order requiring defendant to remove his plants from the land. On the same day that the plaintiffs filed their petition, the defendant himself filed a petition praying for an order requiring the plaintiffs to remove an iron fence built by them, alleged to be on Tago land Asofitu which adjoins the land occupied by the plaintiffs. The defendant's petition was filed a little later in the day than the plaintiffs' petition.

■ Since the proper disposal of both petitions involves the determination of the boundary line between land occupied by the plaintiffs and the adjoining land Asofitu occupied by the defendant, we shall consider the defendant's petition as a counterclaim.

Both pieces of land are communal family land of the Tago Family of Nu'uuli.

Prior to the trial the Court viewed the land involved in the presence of the parties and Tago, the matai of the Tago Family.

Fred Lobendahn, who was Faalua's former husband, died about January 1, 1960. Fred was from Fiji and apparently there was some question about where he should be buried. The defendant Fuimaono, a member of the Tago Family, felt sorry for Faalua and approached his matai Tago and Faalua about having Fred buried on part of the land Le'ele, which was Tago land. Tago consulted with his family members and it was agreed by them that Fred could be buried on Le'ele. When Faalua was informed of this, she said she was willing to bury Fred on Le'ele but wanted a written agreement concerning it first.

At first about 70 members of the Tago Family signed an agreement (it was later torn up) relating to Fred's burial

452

on the land. However, a little later Tago, Faalua, and some members of the Tago Family came to Attorney General Leedom's office where he drafted an agreement, telling them that it was not necessary to have all members of the Tago Family sign it, but only Tago and a representative from each of the clans in the family needed to sign. The agreement was as follows:

"Right of Use

*"Know all men by these presents:*

"That I, Tago L., of the Village of Nu'uuli, American Samoa, acting on behalf of myself and for the Tago family of Nu'uuli, in my capacity as matai thereof, do hereby grant unto Faalua Lobendahn and her children, the right to bury Fred Lobendahn on a portion of the Tago Family land known as LE'ELE, and also the right to use said land as their dwelling place during the lifetime of the said Faalua and during the minority of said children, whichever is the greater.

"The portion of said land Le'ele which is to be used as aforesaid has been pointed out to the said Faalua, and consists of approximately one-fourth of an acre.

"Dated this 7th day of January 1960."

The document was signed by Tago and various members of the family and approved by five chiefs from Nu'uuli. This document is recorded in Volume 4, Register of Miscellaneous, at page 140.

According to the testimony, Tago and a number of members of the family together with Faalua—the document having been signed—went to Le'ele where Tago pointed out the land Faalua and her children were to have, the defendant Fuimaono walking around the land and putting a coconut frond in the ground at each of the four corners of the land pointed out. This was on January 7, 1960, the same day the document was signed. Faalua had Fred buried on the land after the pointing out.

In 1961 Tago, desiring to have the land which had been pointed out registered as the communal family land of the Tago Family, had it surveyed and it was later so registered. A concrete monument was placed in the ground at each of the four corners of the surveyed tract.

Faalua has her house and Fred's grave on the surveyed tract while the defendant occupies and has his house on the aforementioned Tago Family land Asofitu adjoining the surveyed tract and lying northeast of it. This case grows out of a dispute between the plaintiffs and the defendant as to the true northeast boundary line of the land pointed out by Tago on January 7, 1960.

Defendant Fuimaono claims that the northeast boundary of the surveyed tract is not the true boundary of the land pointed out by Tago. Instead, he claims that the true boundary line lies about 14 feet inside the surveyed tract on Faalua's side. The plaintiffs claim that the northeast boundary of the surveyed tract follows the true northeast boundary of the tract pointed out by Tago.

Tago, a witness called by the Court, testified that the boundaries of the surveyed tract were the same as the boundaries of the land pointed out by him for Faalua and her children on January 7, 1960; that the boundaries of the surveyed tract followed the boundaries of the tract pointed out. He did the pointing out and was present at the survey. Faalua was present at the pointing out and also at the survey. She testified that the land pointed out by Tago was the very land later included in the survey and that Tago, in the presence of Savusa, Maluia, Lagafua and Taufete'e, all Nu'uuli chiefs, pointed out the corners to the surveyor.

Defendant Fuimaono, in accordance with his claim, testified that the true boundary of the land on the northeast side pointed out by Tago was about 14 feet inside the surveyed tract. He was present at both the pointing out and the survey. Ativalu Maga, who was the other witness for Fui-

maono, testified that the boundary pointed out by Tago on January 7, 1960 was just a few inches from the fence which (as it was shown to the Court when it viewed the land) is about 27 inches inside the boundary of the survey. His testimony is to the effect that neither the northeast boundary as shown on the survey nor the fence is the true boundary of the land pointed out by Tago. Ativalu Maga was present at the pointing out but not the survey. However, he has seen the concrete monuments at the four corners of the surveyed tract.

Faalua and Tago both agree that the true boundary of the land pointed out is the boundary as shown on the survey. Fuimaono and Ativalu Maga, the witnesses for the defendant, disagree as to where the true boundary is, one saying it is about 14 feet inside the surveyed tract, the other that it is a few inches from the fence which is about 27 inches inside the surveyed tract.

We are of the opinion that the weight of evidence is to the effect that the true northeast boundary of the land pointed out is the northeast boundary as shown on the survey, and we so find.

 Tago is the matai of the Tago Family. As before indicated, both the land pointed out for Faalua and her children and the adjoining land on which defendant Fuimaono lives are Tago communal family lands. In accordance with Samoan customs, Tago, as the matai of the Tago Family, has jurisdiction over the land of his family. He pointed out the land for Faalua and her children on January 7, 1960. He pointed out the corners of the surveyed tract in 1961 to the surveyor in the presence of Savusa, Maluia, Lagafua and Taufete'e, Nu'uuli chiefs. We think we can rely upon the testimony of Tago. He is 86 years old and has been the matai of the Tago Family since 1951. We saw the witnesses and we heard them testify. We believed Tago, especially since one of the witnesses for the defendant

testified that the boundary was in one place and the other that it was in a different place.

One very convincing piece of evidence to warrant the conclusion that the northeast boundary of the surveyed tract is also the true boundary of the land pointed out is the fact that the "Right of Use" document above quoted indicates that the area of the land for Faalua and her children was "approximately one quarter of an acre" while the surveyed tract according to the survey admitted in evidence as Exhibit No. 1 shows that the area of the surveyed tract is .284 of an acre. This area as shown on the survey is "approximately a quarter of an acre" and accords with the area mentioned in the "Right of Use" document.

Since the iron fence which Fuimaono seeks to have removed is about 27 inches inside the surveyed tract, his petition, which we have considered as a counterclaim, must be dismissed.

The plaintiffs in their petition seek an order restraining the defendant from what we consider to be threatened single or occasional trespasses.

"The principle that a court of equity will not interfere to prevent a mere threatened trespass upon real estate is very ancient and well understood. The idea is that such a wrong is merely temporary in its nature and, under all ordinary circumstances, may be fully compensated by an award of damages, and hence that the legal action furnishes perfect and adequate relief." 28 American Jurisprudence 644.

In view of this statement of the law, we believe that we should not grant an injunction, but should leave the plaintiffs to their remedy at law for damages, should the defendant commit a trespass upon the surveyed land. If he should do this, he is subject not only to a civil action for damages but also to criminal prosecution. Sec. 4.0477, A. S. Code, 1961 Ed. provides that any person who shall wrongfully enter upon the lands in possession or use of another . . .

shall, upon conviction, be punished by a fine of not more than $50.00 or imprisonment for not more than two months or both.

Faalua and some persons at her direction have planted a patch of taro inside the surveyed tract. Defendant Fuimaono has very recently planted some taro between Faalua's rows of taro and, in addition, two coconut trees, now some five or six feet high, also inside the surveyed tract. He also planted a breadfruit tree inside the surveyed tract. Plaintiffs pray for an order requiring defendant to remove the taro, coconut trees and the breadfruit tree from the surveyed land. However, the fact is that the taro, coconut trees and the breadfruit tree are growing on and attached to the land pointed out by Tago for Faalua and her children. We think that instead of ordering the removal of the taro and coconut trees we should give Fuimaono the privilege of removing them within 30 days.

### ORDER

Accordingly, it is ORDERED that Fuimaono's petition filed January 22, 1964 against Lutu S. and Faalua be and the same is hereby dismissed. And it is further ORDERED that Fuimaono shall have the privilege of removing the things he has planted on the surveyed tract, viz. taro, two coconut trees, and a breadfruit tree, from the surveyed tract within 30 days from the date of this ORDER, which is ————, 1964. If Fuimaono removes the above-mentioned taro, coconut trees and the breadfruit tree, he shall do so doing as little damage as possible to Faalua's plants.

Costs in the sum of $21.00 are hereby assessed against Fuimaono, the same to be paid within 30 days.